**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.O.-1, J.O., and A.O.-2**

**No. 20-0510** (Kanawha County 18-JA-719, 18-JA-721, and 19-JA-100)

**MEMORANDUM DECISION**

Petitioner Father A.O.-3, by counsel Jason S. Lord, appeals the Circuit Court of Kanawha County's May 27, 2020, order terminating his parental rights to A.O.-1, J.O., and A.O.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Bryan B. Escue, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his post-adjudicatory improvement period and parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, the DHHR filed a child abuse and neglect petition against petitioner and the mother of A.O.-1 and A.O.-2 alleging a history of domestic violence, lack of food, and physical and emotional abuse of the children. The DHHR alleged in one incident the parents brought an older child, M.O., not at issue in this appeal, for a hospital visit where he required seven

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as A.O.-1, A.O.-2, and A.O.-3, respectively, throughout the memorandum decision.

stitches to a gash in his hand.[2] The DHHR alleged that the parents and children were "very timid, looking around and not saying much" during the visit, where they reported the child had fallen while playing and injured his hand. The DHHR alleged that the mother was overheard telling the older child, "do [not] saying anything about the balloon. It was the way it came down. I should [not] have come down towards you." After the hospital visit, the DHHR alleged that a Child Protective Services ("CPS") worker spoke with the family and determined that the mother stabbed the older child's hand when she was attempting to stab the balloon with a knife. The DHHR alleged that the older child disclosed that petitioner and the mother "often physically fight" and that police had visited their home on multiple occasions. The DHHR also alleged that a caseworker spoke with J.O., who confirmed the domestic violence and alleged that petitioner would disconnect the phone so no one could call the police. J.O. also feared what might happen to her upon informing the caseworker about the parents' violent tendencies. Petitioner spoke with the DHHR caseworker and law enforcement, blamed the children's mother, and claimed that any incidents were misunderstandings. The circuit court held a preliminary hearing, wherein it conducted in-camera interviews with the children and removed the children from the home. Petitioner was ordered to cease contact with the mother and children. The DHHR filed two amended petitions adding A.O.-2 to the proceedings following his birth and raising additional allegations of abuse against the parents.

The circuit court held an adjudicatory hearing in March of 2019 wherein petitioner stipulated to abusing and neglecting the children and the court granted him a post-adjudicatory improvement period, including the requirement that petitioner participate in domestic violence counseling. Petitioner's prior no contact order remained in effect. The circuit court held a review hearing in May of 2019, during which it found that petitioner was in compliance with his improvement period and granted petitioner supervised visitation with the children. The circuit court held a second review hearing in August of 2019, wherein a DHHR caseworker testified about petitioner's contact with the children outside of supervised visitation, in violation of the circuit court's order. The caseworker testified that he made an unannounced visited to the mother's home in Pennsylvania in May of 2019, but the mother was not at home. The children's grandmother was there and explained that the mother was living in West Virginia with petitioner and that they had picked up the children together in violation of the circuit court's order that petitioner not have unsupervised visits with the children. During the caseworker's testimony, petitioner began texting on his cell phone. The circuit court inquired if petitioner was texting the mother; petitioner denied texting the mother. The circuit court requested that petitioner turn over the phone and, even after it was revealed that he texted the mother, petitioner continued to deny the communication, asserting the texts were to a girlfriend. The circuit court ordered a forensic inspection of petitioner's phone and found that the parents committed fraud upon the court, noting that "their lying and deception created an unsafe environment for the children."

The circuit court held a series of dispositional hearings in January, February, and March of 2020. At the second dispositional hearing, petitioner moved to withdraw his stipulation to being an abusing and neglecting parent. Over petitioner's objection, the circuit court denied the motion. The circuit court heard testimony from the mother of A.O.-1 and A.O.-2, who testified that she

---

[2]The child has reached the age of majority and is not at issue on appeal.

and the children's grandmother were going to live in a shelter because of fear of further violence from petitioner. The mother also testified that petitioner told her not to answer the door when the police were called on prior occasions. Next, the children's grandmother testified that petitioner prevented them from leaving their residence and threatened their lives. Finally, the mother of J.O. confirmed a violent history with petitioner. At the final dispositional hearing, the DHHR put on further evidence that petitioner's anger issues prevented him from being an appropriate parent. Following the close of the testimony and evidence presented, the DHHR and guardian moved for petitioner's parental rights to be terminated.

In light of the evidence at the dispositional hearing, the circuit court found there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future as petitioner did "not make sufficient efforts to rectify the circumstances that led to the filing of this [p]etition." The circuit court further found that petitioner did not follow through with the family case plan or other rehabilitative services and that it was in the best interests of the children to terminate petitioner's parental rights.[3] The circuit court entered an order reflecting its decision on May 27, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his improvement period and, subsequently, his parental rights. According to petitioner, he was "successful under his original improvement [period]," acknowledged participating in domestic violence, and enrolled in domestic violence counseling. Petitioner asserts this was the lone condition of his improvement period and he complied with this goal. We find petitioner's arguments unavailing.

---

[3] The mother of A.O.-1 and A.O.-2 successfully completed her improvement period and the petition against her was dismissed. The permanency plan for these children is to remain in the custody of their mother. The permanency plan for J.O. is to remain in the custody of her nonabusing mother.

Pursuant to West Virginia Code § 49-4-610(7), a circuit court may terminate a parent's improvement period if he "has failed to fully participate in the terms of the improvement period." Here, the record is clear that petitioner failed to fully comply with the terms and conditions of his post-adjudicatory improvement period. Although there were points in time where petitioner complied with services generally, he fails to address the fact that he did not complete many of the other terms required by his family case plan. According to petitioner, "the lone condition of [his] improvement period" was to participate in domestic violence counseling. However, this argument misstates the record. Petitioner was aware that he was subject to a circuit court order to cease contact with the children. Petitioner then denied having seen the children since December of 2018 and denied any relationship with the mother of A.O.-1 and A.O.-2 at a court hearing, despite evidence to the contrary. Further, when petitioner was confronted with evidence of this during the hearing, he began texting the children's mother. Petitioner then lied about that communication even after turning over his phone to the circuit court. Ultimately, petitioner bore the responsibility of completing the goals of his family case plan, and he fails to address his lack of candor with the circuit court and failure to comply with its orders. As such, we find that the overwhelming evidence supports the circuit court's finding that petitioner failed to complete the terms of his improvement period and that termination of his improvement period was appropriate.

Further, petitioner asserts that the circuit court's decision to terminate his parental rights was improper when he was making substantial progress toward reunification. But, it is within "the court's discretion to terminate the improvement period before the . . . time frame has expired if the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996). The circuit court's order is specific and enumerates several areas where petitioner failed to make progress as the basis for the termination of his parental rights. The circuit court's findings are based on substantial evidence that petitioner was never fully compliant in his improvement period and that he failed to avail himself of many of the services offered. In addition, the circuit court found that petitioner had failed to follow through with the DHHR's rehabilitative services based on the evidence of petitioner's sporadic compliance and his failure to abide by the circuit court's orders, to be honest with the court, or to accept responsibility for his actions—all very strong indicators that petitioner was not making necessary progress during the improvement period. Thus, petitioner is entitled to no relief on this ground.

Finally, the circuit court found that termination of petitioner's parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 27, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison